No. 24-11121-J

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

TRANSWORLD FOOD SERVICE. LLC, a/k/a
TRANSWORLD FOODS, and EMILIA FOODS, LLC,

Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
_____

## BRIEF OF APPELLANT
_____

**MORGAN & MORGAN**

William Maxwell Compton
200 Stephenson Ave., Suite 200
Savannah, GA 31405
Ph. (912) 443-1017
Fax (912) 443-1184
mcompton@forthepeople.com

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

Gary J. Toman
3344 Peachtree Road N.E., Suite 2400
Atlanta, Georgia 30326
Ph. (404) 876-2700
Fax. (404) 875-9433
gtoman@wwhgd.com

*Attorneys for Appellants*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with 11th Circuit Rule 26.1-1, the undersigned counsel of record certifies that the following is a list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    TransWorld Food Service, LLC a/ka TransWorld Foods (Appellant)

2.    Emilia Foods, LLC (Appellant)

3.    Morgan & Morgan (Appellants' Counsel Firm)

4.    Weinberg Wheeler Hudgins Gunn & Dial, LLC (Appellants' Of-Counsel Firm)

5.    William Maxwell Compton (Appellants' Counsel)

7.    Gary J. Toman (Appellants' Of-Counsel)

8.    Nationwide Mutual Insurance Company (Defendant)

9.    Freeman Mathis & Gary, LLP (Defendant's Counsel Firm)

10.    Philip W. Savrin (Defendant's Counsel)

11.    The Honorable Steven D. Grimberg (District Court Judge)

12.    Blevins, Teri

13.  Dant, Wally

14.  DV2, LLC

15.  MariBella, LLC

16.  Moceri, Mario

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL LLC**

*/s/ Gary J. Toman*
Gary J. Toman
Georgia Bar No. 714651
gtoman@wwhgd.com

3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
(404) 876-2700

**MORGAN & MORGAN**

*/s/ Max Compton*
William Maxwell Compton
Georgia Bar No. 380092
mcompton@forthepeople.com

200 Stephenson Ave., Suite 200
Savannah, GA 31405
(912) 443-4017

*Attorneys for TransWorld Food Service,
LLC a/k/a TransWorld Foods and
Emilia Foods, LLC*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants Transworld Food Service. LLC, a/k/a Transworld Foods, and Emilia Foods, LLC ("Appellants") respectfully request oral argument. Appellants submit that oral argument will assist the Court to explore the application of insurance law to the special facts presented here.  Georgia caselaw on several of the points facts at issue is spotty and uncertain, and oral argument will assist the court in making its judgment as to the Georgia law to be applied here.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ...................................................1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS................................................................................ ii

TABLE OF CITATIONS ............................................................................. iv

STATEMENT OF SUBJECT-MATTER AND ...............................................1

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE.......................................................................2

   A.  The Course of Proceedings and Dispositions in the Court Below. .................2

   A.  The Course of Proceedings and Dispositions in the Court Below. .................2

   B.  Statement of the Facts..........................................................................3

      1.  2016 Loss ................................................................................3

      2.  2017 Loss ................................................................................7

      3.  Bad Faith ...............................................................................10

   C.  Statement of the Standard or Scope of Review. ............................................11

SUMMARY OF THE ARGUMENT .............................................................11

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................14

I.   THE CONTRACTUAL LIMITATIONS PERIOD WAS WAIVED
BY NATIONWIDE, NOT MERELY TOLLED...................................................14

II.  THE DISTRICT COURT ERRED IN CONCLUDING THAT, AS A
MATTER OF LAW, THE NOTICE PROVISION IN APPELLEE'S INSURANCE
POLICY BARRED APPELLANTS' CLAIM REGARDING THE 2017 LOSS…17

III.   THE DISTRICT COURT ERRED IN CONCLUDING THAT THE
COVERAGE FOR BUSINESS INTERRUPTION UNDER APPELLANTS'
INSURANCE POLICY WITH APPELLEE WAS LIMITED TO INCIDENTS
WHERE THERE HAD BEEN A COMPLETE CESSATION OF BUSINESS
DESPITE THE CLEAR AND SUBSTANTIAL LOSSES INCURRED BY
APPELLANTS AS A RESULT OF THE INTERRUPTION OF APPELLANTS'
BUSINESS..................................................................................................20

IV.   APPELLANT IS ENTITLED TO HAVE ITS STATUTORY BAD FAITH
CLAIMS FOR THE 2016 LOSS AND 2017 LOSS REINSTATED UPON
REVERSAL OF THE DISMISSAL OF THE 2016 LOSS AND 2017 LOSS
BREACH OF CONTRACT CLAIMS. ...............................................................23

CONCLUSION ....................................................................................................23

# TABLE OF CITATIONS

**Cases**

*Advocate Networks LLC v. Hartford Fire Ins. Co.*,
    296 Ga. App. 338 (2009) ...........................................................................19

*American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co.*,
    949 F.2d 690 (3d Cir. 1991)......................................................................21

*Appleby v. Merastar Ins. Co.*,
    223 Ga. App. 463 (1996) ...........................................................................15

*Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*,
    356 F.3d 850 (8th Cir. 2004).....................................................................21

*Auto-Owners Ins. Co. v. Ogden*,
    275 Ga. 565 (2002) ...................................................................................16

*Balboa Life and Cas. LLC v. Home Builders Fin., Inc.*,
    304 Ga. App. 478 (2010) ................................................................. 13, 16

*Dittler Bros., Inc. v. Allendale Mut. Ins. Co.*,
    509 F. Supp. 514 (N.D. Ga. 1981) ............................................................15

*Fountainbleau 2006, LLC v. U.S. Fire Ins. Co.*,
    2010 WL 11597704 at *7 (N.D. Ga. Dec. 21, 2010)..................................21

*Lankford v. State Farm Mut. Ins. Co.*,
    307 Ga. App. 12 (2010) .............................................................................19

*Looney v. Ga. Farm Bureau Mut. Ins. Co.*,
    141 Ga. App 266 (1977) ...........................................................................15

*Plantation Pipe Line Co., v. Stonewall Ins. Co.*,
    335 Ga. App. 302 (2015). .........................................................................17

*Poer v. Jefferson Cnty. Commission*,
    100 F.4th 1325 (11th Cir. 2024) ...............................................................11

*Progressive Mountain Ins. Co. v. Bishop*,
    338 Ga. App. 115 (2016) ............................................................18

*Rothenberg v. Liberty Mut. Ins. Co.*,
    115 Ga. App. 26 (1967) .............................................................22

*Rucker v. Allstate Ins. Co.*,
    194 Ga. App. 407 (1990) .................................................... 18, 19

*Studley Box and Lumber Co. v. National Fire Ins. Co.*,
    85 N.H. 96, 154 A. 337 (1931) ................................................21

**Statutes**

O.C.G.A. § 33-4-6...........................................................................13

**Rules**

11th Cir. Rule 25-3(a) .......................................................................2
11th Cir. Rule 28-1 ...........................................................................a
11th Cir. Rule 32-4 ...........................................................................a
Fed. R. App. P. 32 (a)(7)(B)(i)...........................................................a
Fed. R. App. P. 32(f) ........................................................................a
Fed. R. App. P. 32(g) ........................................................................a
Fed. R. Civ. P. 56 ...........................................................................11

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Subject matter jurisdiction in this case rests on 28 U.S.C. § 1332 in that diversity of citizenship and the amount in controversy requirements are satisfied. Appellate jurisdiction exists in that this is a timely appeal from the final judgment of the district court entered after the district court granted on remand Appellant's motion to amend the complaint to eliminate claims that had been voluntarily resolved and then entered a final judgment.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in granting summary judgment on Appellants' loss occurring on January 17, 2016 ("the 2016 Loss") when it held that even though Appellee waived the contractual suit limitation, the effect of the waiver was to merely toll the deadline created by that limitation until the denial of the remainder of the claim.


2.    Whether the district court erred in concluding that, as a matter of law, the notice provision in Appellee's insurance policy barred Appellants' breach of contract claim for damages regarding the loss occurring on July 10, 2017 ("the 2017 Loss").

1

3.    Whether the district court erred in concluding that the coverage for business interruption under Appellants' insurance policy with Appellee was limited to incidents where there had been a complete cessation of business despite the clear and substantial losses incurred by Appellants as a result of the interruption of Appellants' business.

4.    Whether the district court erred, as a matter of law, when it dismissed Appellants' statutory bad faith claims for the 2016 and 2017 Losses.

## STATEMENT OF THE CASE

### A.    The Course of Proceedings and Dispositions in the Court Below.

Appellants brought this commercial property insurance suit to address four different losses experienced between 2015 and 2018.  Appellee Nationwide Mutual Insurance Company ("Nationwide" or "Appellee") moved for summary judgment on Appellants' claims. The district court entered an order granting the motion in part and denying it in part. As to the claims remaining, one claim was settled and the rest were resolved by jury trial.  The district court then entered judgment. Appellants appealed, and this court remanded in light of the manner in which the settled claim was dismissed.  Appellants corrected the issue, moving to amend the complaint to omit the settled claim, and then moved for judgment on the remaining

claims.  The district court then entered an appealable final judgment.  Appellants then filed a notice of appeal from that judgment, which is the subject of this appeal.

**B.**    **Statement of the Facts.**

Appellants are two Georgia companies that operate a wholesale food business under the name TransWorld Food Service, LLC. The operators of the business are Mario Moceri and Teri Blevins. Appellants' customers are restaurants, hotels and country clubs located throughout the metro Atlanta area. Appellants sell to their customers fresh and frozen proteins, vegetables, fruit, dairy products, disposable paper items and other items for back-office operations.  Appellants operate their wholesale food business as a single enterprise.

Appellants' facility consists of six coolers and a walk-in freezer where they conduct their operations and store their inventory. Doc 129-18 Pg 106:7-25, 107-108, 109:1-11; Doc 129-1. The coolers and freezer are constructed out of insulated, polystyrene foam panels. Doc 129-18 Pg 72:24-25, 73:1-10; Doc 132-15 Pg 2-3. The coolers and freezer are connected to a refrigeration system in order to maintain proper temperature. Doc 129-18 Pg 109: 12-21; *see generally,* Doc. 123-28. The refrigeration system consists of condensers, coils, evaporators and compressors (collectively, the "Refrigeration System"). (*Id..*

**1.**    **2016 Loss**

3

On January 17, 2016, a catastrophic water loss occurred at the Property due to the failure of the fire-water main servicing the Property (the "2016 Loss"). *See generally,* Doc. 123-19; Blevins EUO 94:4-12; Doc. 123-10 Pg 111. The 2016 Loss was the result of the negligence of a plumbing contractor hired by the Landlord to work on the subject fire-water main.  Doc 123-19. The 2016 Loss resulted in widespread water damage throughout the entire Property. *Id*.; 129-15 Pg 94:4-12; Doc 123-10 Pg 111; Doc 129-4. Following the loss, the Landlord's insurance carrier retained ServPro of North Atlanta/Buckhead to perform the mitigation work for this loss. Doc 129-5. The cost of the mitigation work alone was $240,273.69. *Id*. Pg 4-5.

At the time of the 2016 Loss, Appellants had in effect a Premier Business owners insurance policy issued by Nationwide which provided certain coverage for Appellants' business property and operations.  Doc. 123-2.  Appellants' filed a claim for the 2016 Loss with Nationwide.  Nationwide's adjuster inspected the Property on or around January 28, 2016. Doc. 123-10 Pg 111. Following his inspection, the adjuster noted that he observed water damage to the office furniture in the main office area, flooring and drywall cut out in the sales office area, severe cracking in the slab where the loss originated, and cracks on the Appellants' cooler and freezer insulated walls due to water pressure. *Id.*. Nationwide's adjuster also retained a forensic consulting firm to inspect the water damage to Appellants'

4

freezer and coolers. *See* Doc 123-15. The consulting firm concluded that the 2016 Loss caused water damage to the insulated panels used in the construction of Appellants' freezer and coolers that required replacement of those panels. *Id.* Pg 3.

In relation to this loss, Appellants specifically made claim for: (1) building coverage for the damage to their freezer and coolers; (2) business personal property coverage for the damage to the food inventory and chattels in the Property; (3) loss of business income; and (4) extra expenses coverage. *See* Doc 129-6.

As to the building coverage portion of the claim, Nationwide agreed that the Permatherm walls that form Appellants' freezer and coolers needed to be replaced and made payment for the same. Doc. 123-16; *see also* Doc. 123-15. However, Nationwide denied coverage for replacement of the concrete slab in the freezer and the concrete curbs in Appellants' seafood rooms. *Id.* Pg 1-3. Nationwide stated that Travelers, as the Landlord's insurance carrier, would be responsible for the cost to repair the slab beneath the freezer. Doc 129-15 Pg 100:12-25, 101:1-2. Travelers issued partial payment for that work to the Landlord, but the Landlord refused to provide those funds to Appellants or their contractor. *Id.* Pg 101:3-22.

As to the business personal property portion of the claim, Appellants and Nationwide negotiated the amount of that claim up to and beyond one year after the date of loss. Doc 129-16 Pg 156-167. As part of those negotiations, Nationwide

had its special investigations unit ("SIU") review food product invoices submitted by Appellants. *Id.* Pg 167:1-18, 212:19-25, 213:1-7. SIU concluded that the invoices were valid and confirmed that payment was owed for those items. *Id*. The business personal property portion of the 2016 Claim was not fully resolved until March 20, 2017 when Nationwide made a final payment for that portion of the claim. *Id*. Pg 167:19-21.

Similarly, Appellants and Nationwide negotiated the loss of business income portion of the 2016 Claim up to and well beyond one year after the date of the loss. Doc 129-16 Pg 167:22-25, 168:1-21; *see also* Doc 123-10 Pg 58. Nationwide referred the loss of business income claim to an outside forensic accounting firm, RGL Forensics. RGL Forensics prepared three reports regarding Appellants' loss of business income. Doc 129-7. The first report, dated March 21, 2017, concluded that the 2016 Loss resulted in Appellants sustaining a $738,074.01 loss in business income. *Id.* Pg 1-22. The second report, dated November 9, 2017, revised that figure to a $327,622.89 loss in business income. at p. 23-37. The third report, dated March 5, 2018, further revised that figure to a $341,715.89 loss in business income. *Id.* at 38-55. The reason for the large discrepancy between the first report and the second and third reports is that RGL Forensics included loss caused by margin erosion in its first report, but did not include it in the subsequent reports.

*Compare* Doc 129-. 1-22, *with* at p. 23-55. This was done at the direction of Nationwide. Doc 129-17 Pg 80:9-25, 81:1-17, 82:6-14.

Nationwide paid a total of $341,715.89 in loss of business income coverage for this loss. Doc 129-16 Pg 187:24-25, 188:1-5; Doc 129-7 at p. 5. Nationwide made the first loss of business income payment on June 21, 2016. Doc 129-16 Pg 168:14-21; Doc 123-14 Pg 1-2. The final business income payment for this loss was not made until March 22, 2018. Doc 129-16 Pg 167:22-25, 168:1-21; Doc 123-14 Pg 1-2. At no point did Nationwide notify Appellants that it would insist on compliance with the suit limitations provision in relation to the 2016 Loss. Doc 129-21 ¶ 13.

### 2.    2017 Loss

In or around July 2017 the Landlord retained a roofing contractor, Tip-Top Roofers, Inc. ("Tip-Top Roofers") to perform certain repair work on the Property's roof. Doc 129-15 Pg 35:4-25, 36:1-22. On July 10, 2017, while performing that work, Tip-Top Roofers negligently cut the Freon line connected to Appellants' freezer which allowed all of the Freon servicing the freezer to escape (the "2017 Loss"). *Id.*; Doc 123-21 Pg 34-35, 40:11-25, 41:1-2. The 2017 Loss resulted in a complete loss of Appellants' freezer inventory. Doc 129-15 40:25, 41:1-2. Appellants sustained a loss of business income due to the loss of their freezer inventory. Doc 63 Pg 100-118. The 2017 Loss also caused damage to the

compressor used in Appellants' freezer. Doc 129-16 Pg 60:19-25, 61:1-8; Doc 123-21 Pg 23-24.  At the time of the 2017 Loss, Appellants had a renewed version of the Nationwide Premier Businessowners policy in effect.  Doc. 123-4.

Appellants initially filed a claim with Tip-Top Roofers' liability insurer, Continental Insurance Company ("Continental"), in an effort to recover their damages from this loss from the at-fault party. Doc 129- 15 Pg 41:10-17.  The Policy provides, in pertinent part, that an insured must give "prompt notice of the loss or damage. Include a description of the property involved." This policy provision will herein be referred to as the "notice provision." *See generally,* Doc 123-10. Continental retained Gallagher Bassett to service Appellants' claim against Tip-Top Roofers. *Id.*. Gallagher Bassett retained Custard Insurance Adjusters to prepare an inventory of the food products damaged by the 2017 Loss. *Id*. Pg 41:3-13. After several months of adjusting the claim, Gallagher Bassett made payment to Appellants for the inventory damaged in the 2017 Loss in the amount of $94,115.54. Doc 123-21 Pg 26-27; Doc. 123-23.  Appellants attempted to recover their loss of business income damages through the liability claim, but Continental/Gallagher Bassett never provided any such coverage. Doc 129-15 Pg 59:23-25, 60:1-18.

Once Appellants determined that they would not be fully compensated for their damages by the at-fault party, they proceeded to file a claim with Nationwide

for their remaining damages arising out of the 2017 Loss. Doc 129-15 Pg 72:15-25,73:1-15; Doc 123-21 Pg 34-35). On November 2, 2017 Nationwide acknowledged receipt of the claim and assigned it claim number 227551-GG (the "2017 Claim"). *See generally,* Doc 123-20 and Doc 123-21; Doc 123-21 Pg 34-35. Nationwide assigned adjuster Russ Dingess to the 2017 Claim. Doc 129-19 Pg 40:24-25, 41, 42:1-13

The Nationwide policy provided, in pertinent part, that Appellant must give "prompt notice of the loss or damage . . ." Doc 123-4 Pg 38.  However, upon receipt of the 2017 Claim, Nationwide did not advise Appellants that the 2017 Claim had been filed untimely. Doc 123-21 Pg 34-35; Doc 129-16 Pg 48:12-17. Rather, Nationwide proceeded with the adjustment of the claim, including acknowledging that the 2017 Loss was a covered loss under the Policy by making payment to Appellants for replacement of the damaged freezer compressor. Doc 129-19 Pg 67:13-24.

Subsequent to Nationwide's payment for the damaged compressor, the claim investigation focused on Appellants' loss of business income claim. *See generally,* Doc 123-20 Pg 3-40. Despite a lengthy investigation into Appellants' loss of business income claim, Nationwide never made a loss of business income payment to Appellants for the 2017 Loss. Doc 129-16 Pg 44:9-11. Nationwide's investigation into the 2017 Claim included taking the examination under oath of

Ms. Blevins on January 8, 2019. *See generally,* Doc 129-15. Nationwide examined

Ms. Blevins regarding all of Appellants' claims during her EUO. *Id*. Nationwide

refused to issue loss of business income coverage for the 2017 Loss even though

the adjuster assigned to the claim noted that he could "logically

assume there would be a [business income] loss of some kind with a complete

inventory loss . . . ." Doc 123-21 Pg 26.

Nationwide did not deny any portion of the 2017 Claim on late notice

grounds, or otherwise. Doc 129-16 Pg 48:18-21. Instead, Nationwide continued to

investigate the 2017 Claim with Appellants in an effort to bring it to a resolution.

*Id*. Pg 44:17-25, 45:1-3. As of July 2019, when Appellants filed the initial

complaint in this dispute, Nationwide claimed that the 2017 Claim was still under

investigation. Doc 129-19 Pg 48:18-21.

### 3.     Bad Faith

Finally, on May 21, 2019, Appellants submitted a demand letter on all of its

claims to Nationwide, pursuant to O.C.G.A. § 33-4-6. Doc 123-7. Rather than

provide a response to Appellants' demand letter, Nationwide offered to go to

mediation. Doc 129-7 Pg 16:9-17; Doc 129-10. The parties scheduled mediation

for August 7, 2019; however, Nationwide cancelled the mediation on August 5,

2019. Doc 129-11.

Nationwide never responded to Appellants' bad faith demand letter. Doc 129-11 Pg. 21:14-17. Nationwide did not make any requests for additional information or documentation from Appellants in response to their bad faith letter. Doc 129-11 Pg 2 15:11-19. Nationwide did not make payment to Appellants within sixty days of Appellants' bad faith demand letter.

**C.    Statement of the Standard or Scope of Review.**

This is an appeal from the granting of summary judgment with respect to certain claims asserted by Appellants.  The district court's ruling is subject to de novo review. *Poer v. Jefferson Cnty. Commission*, 100 F.4th 1325, 1335 (11th Cir. 2024). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## SUMMARY OF THE ARGUMENT

The district court's order granting partial summary judgment to Appellee Nationwide is erroneous as a matter of law in four critical respects. First, the district court committed reversable error when it ruled that even though Appellee waived the contractual suit limitation regarding the 2016 Loss, the effect of the waiver was to merely toll the deadline created by that limitation until the denial of the remainder of the claim. Second, the district court erred in concluding that Appellants notice of the 2017 Loss to Nationwide three and one-half months after

the incident was untimely as a matter of law.  Third, the district court erred in concluding that there was no coverage under the business interruption provision of Appellants' insurance policy with Appellee because as a matter of law that provision applies only to incidents where there had been a complete cessation of business.  Finally, the court erred in dismissing Appellants' statutory bad faith claims associated with the 2016 Loss and 2017 Loss.

As to the claim regarding the 2016 Loss, the district court misconstrued Georgia law as to the effect of a waiver of a contractual limitation period. Under *Looney v. Ga, Fam Bureau Mut. Ins. Co*., 141 Ga. App. 266, 267 (1977), a limited waiver in the application of that limitation during negotiations over the claim has the effect of tolling the limitation until the claim is ultimately denied.  However, in circumstances like the present, where the district court found that Nationwide "lulled TransWorld into believing that the full amount of the 2016 claim would be resolved without suit" Doc 140 - Pg 18, the effect of the waiver is broader.  In such cases, the waiver is complete, and the provision may no longer be enforced.

The district court also erred when it held that the three and one-half month notice given by Appellant for the 2017 Loss was unjustified as a matter of law. The evidence showed that the cause of the delay in notifying Nationwide was that Appellants reasonably believed that the claim would be paid by a third party, and whether and how much would be paid left the amount of damage to be claimed

uncertain.  Since the issue of whether a delay in providing notice is justified is generally a question of fact for the jury, *Balboa Life and Cas. LLC v. Home Builders Fin., Inc.*, 304 Ga. App. 478, 481 (2010), the district court erred in resolving this issue as a matter of law.  Appellants were entitled to have a jury evaluate the cause of the delay and the timeliness under the circumstances.

The district court also erred when it held that the clause in the policy providing coverage for loss of business income due to a suspension of operations requires a complete cessation of business. There is no Georgia authority directly on point, and the better view is that in limited circumstances, an event that cripples a business for a time can be sufficient even though the doors to the business remain open.  Indeed, the requirement of complete cessation would have the undesired effect of causing businesses to close unnecessarily to invoke coverage when even limited operations could be valuable to their customers.  And, in fact, Nationwide itself did not construe this provision to require complete cessation, as Nationwide paid for lost business income relating to the 2016 Loss even though it is agreed that there was no complete cessation of business.

Finally, the district court erred when it dismissed Appellants' statutory bad faith claims for the 2016 Loss and 2017 Loss.  The district court correctly acknowledged that bad faith claims, pursuant to O.C.G.A. § 33-4-6, are contingent on the existence and viability of underlying breach of contract claims.  However,

13

because the district court's dismissal of the 2016 Loss and 2017 Loss was in error, so was the dismissal of the associated bad faith claims. The bad faith claims must, therefore, be restored upon reversal of the dismissal of the 2016 Loss and 2017 Loss breach of contract claims.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.  THE CONTRACTUAL LIMITATIONS PERIOD WAS WAIVED BY NATIONWIDE, NOT MERELY TOLLED

The district court erred when it considered Nationwide's actions to waive the contractual limitations period as mere tolling. Rather, the court should have recognized that the waiver by Nationwide with respect to the 2016 Loss caused by a catastrophic water loss was fundamental and rendered the limitations period a dead letter.

The district court correctly began its analysis by finding that there was a waiver of the contractual limitation provision with respect to the 2016 Loss. Doc. 140 Pg 17. As the court noted, Nationwide investigated the claim, corresponded with Appellants about the investigation and paid $1,056,464 for property damage and lost business income. *Id*. The court found that a genuine issue of fact arose as to whether Nationwide "lulled TransWorld into believing the full amount of the claim would be resolved without suit." *Id.* Pg 17-18. The court noted that Nationwide made a series of partial payments for business income losses, indicated

that its investigation my extend at least 12 months from the date of loss, and made no reservation of rights.  Id. Some of the payments were after the one-year suit limitation period.  *Id.*  In light of all these facts, the district judge found that the limitations provision had been waived, citing *Appleby v. Merastar Ins. Co*., 223 Ga. App. 463, 464 (1996).

Nonetheless, the district court erroneously concluded that the effect of the waiver was tolling of the period during negotiations and not a complete waiver. The court relied on *Looney v. Ga. Farm Bureau Mut. Ins. Co*., 141 Ga. App 266, 267 (1977) and *Dittler Bros., Inc. v. Allendale Mut. Ins. Co*., 509 F. Supp. 514, 516 (N.D. Ga. 1981). The district court concluded that the limitations period began to run on the date of a partial denial of remaining claims and since the suit regarding the 2016 Loss was filed more than 12 months after that date, the district court ruled that the 2016 Loss claim was barred by the limitations provision.  Doc. 140 Pg. 19.

The district court's application of the tolling language of *Looney* to the instant case is incorrect.  *Looney, Dittler Bros*. and the predecessor case *Peoples v. Western Fire Ins. Co.*, 96 Ga. App 39,42 (1957) all involved situations where negotiation or appraisal consumed a significant portion of the limitations period. In such cases, it makes sense to apply a tolling approach, because the limitation period is being effectively reduced by policy and claim administration.

That is much different from the typical waiver scenario and the facts here, where the insured is being led to believe that the full amount of the claim would be resolved without suit. In such a case, the limitations provision effectively becomes a dead letter, as the insured is induced to assume that no suit needs to be filed, making any limitation irrelevant. *See Auto-Owners Ins. Co. v. Ogden,* 275 Ga. 565, 567 (2002); *Balboa Life and Cas. LLC v. Home Builders Finance, Inc*., 304 Ga. App. 478, 481 (2010). Indeed, as the court of appeals observed in *Ga. Farm Bureau Mut. Ins. Co. v. Mikell*, 126 Ga. App. 640, 642 (1972), appraisal proceedings will toll the time for the running of contractual limitation periods, but waiver of such provisions will occur where there appears a promise to pay, express or implied. *Id.*

In other words, the tolling remedy employed by the district court is not appropriate for cases of true waiver, where the insured is led to believe that no suit will be necessary. The instant case is such a case, and it was error for the district court to apply such a lenient remedy for behavior that merits the normal consequence of a waiver.

## II. THE DISTRICT COURT ERRED IN CONCLUDING THAT, AS A MATTER OF LAW, THE NOTICE PROVISION IN APPELLEE'S INSURANCE POLICY BARRED APPELLANTS' CLAIM REGARDING THE 2017 LOSS.

The district court also concluded as a matter of law that Appellants' claim for reimbursement of its 2017 Loss was barred by the fact that it had given notice regarding the claim three and one half months after the occurrence. The district court ruled that the delay in providing notice was not justified because the cause of the delay was Appellants' uncertainty regarding its claim with the insurance carrier for the at-fault party. The district court reasoned that relying on the misunderstanding that that other policy would be responsible for the claim was unjustified and therefore unreasonable as a matter of law. Doc. 140 at Pg. 23-24.

The district court's conclusion that the notice given three and one half months after the occurrence was unreasonable as a matter of law is wrong and should be reversed. The starting point for the analysis is that under Georgia law, the notice provision at issue here was a precondition to coverage. Accordingly, in order to obtain coverage, Appellants must show that they complied with the notice provision or had a justification for failing to do so. *Plantation Pipe Line Co., v. Stonewall Ins. Co*., 335 Ga. App. 302, 310-11 (2015). Whether notice given was timely or whether there was justification for the delay are generally both questions for the jury. *Id.* at 306.

17

Here, the notice provision requires that notice be given "promptly."  In such a case, where no specific time is specified, "there is no bright-line rule on how much delay is too much."  *Progressive Mountain Ins. Co. v. Bishop*, 338 Ga. App. 115, 119 (2016).  Thus, in *Rucker v. Allstate Ins. Co.,* 194 Ga. App. 407, 407-08 (1990), the court of appeals concluded that a delay of over one year could satisfy a provision that notice be provided "promptly."  Likewise, a delay of almost eleven months may still comply with a requirement that notice be promptly provided.  *Bishop*, 338 Ga. App. at 119-20; *see Sands v. Grain Dealers Mut. Ins. Co*., 154 Ga. App. 720, 721 (1980).

In *Bishop*, for example, the claimant presented evidence that the reason for the late notice was that he did not realize the extent of his injuries and thought that the other insurance would be sufficient to cover them.  Similarly, in *Rucker*, ignorance of the extent of a child's injuries was sufficient justification for the late notice so as to create a jury issue.  194 Ga. App. at 408.

Here, the facts are similar to *Bishop* and *Rucker*.  In fact, the delay in giving notice is much less here. Here there is only a three and one half month delay.  That delay was caused by the fact that the carrier for the contractor that cut the freon line paid some but not all of the claim, paying for the loss of freezer inventory, but not for the compressor or the loss in business income.  Thus, during the period of the delay, the amount of the claim to be submitted to Nationwide was uncertain

18

and in fact was reduced. Like the injuries at issue in *Bishop* and *Rucker*, Appellants' uncertainly in the amount of the claimed injuries led to the notice delay. The result was not, as the trial court found, a misunderstanding about the status of other claims. Accordingly, a genuine issue of material fact existed relating to the justification for the delay and whether the delay was reasonable.

The district court further relied on *Lankford v. State Farm Mut. Ins. Co*., 307 Ga. App. 12 (2010) to support the conclusion that there the delayed notice here is unreasonable as a matter of law. *Lankford* is distinguishable. There, the policy clause at issue required notice as soon as reasonably practicable and there was no justification given for the delay other than the assumption that the other carrier would pay for the loss, which it did not. In contrast, here there was uncertainty about the amount of the claim that would be submitted to Nationwide. Once that uncertainty resolved, the claim was submitted promptly. Accordingly, unlike *Lankford*, the facts here show a justification that at least creates an issue of fact.

Likewise in *Advocate Networks LLC v. Hartford Fire Ins. Co*., 296 Ga. App. 338 (2009) there was a four-month delay in the giving of notice. There, the policy required certain documents relevant to any claim to be provided immediately and for notice to be provided "as soon as is practicable." In *Advocate*, the only reason given for the late notice was a misunderstanding regarding whether the other party would pay. The court of appeals there concluded that the delay was unjustified as a

19

matter of law.  In contrast here, there was uncertainty regarding the amount of the claim that would ultimately be submitted to Nationwide.  *Advocate* is therefore distinguishable from the instant case.

In short, a genuine issue of material fact exists as to whether the justification for the three and one half month delay in giving notice was reasonable and on the reasonableness of the delay period.  These questions are matters on which reasonable jurors could disagree.  Therefore, the district court erred when it held as a matter of law that the delay here was unreasonable as a matter of law.

## III. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE COVERAGE FOR BUSINESS INTERRUPTION UNDER APPELLANTS' INSURANCE POLICY WITH APPELLEE WAS LIMITED TO INCIDENTS WHERE THERE HAD BEEN A COMPLETE CESSATION OF BUSINESS DESPITE THE CLEAR AND SUBSTANTIAL LOSSES INCURRED BY APPELLANTS AS A RESULT OF THE INTERRUPTION OF APPELLANTS' BUSINESS.

The district court erred when it held that the clause in the policy providing coverage for loss of business income due to a suspension of operations requires a complete cessation of business. While there is no Georgia authority directly on point, the better view is that in limited circumstances, an event that cripples a business for a time can be sufficient even though the doors to the business remain open. That is the case here, and it was error for the district court to grant summary judgment with respect to the business loss claims.

There are no binding Georgia cases deciding the issue of whether there must be a complete cessation of operations. There is some support in the case law that a complete cessation of all business activity is not required. *Fountainbleau 2006, LLC v. U.S. Fire Ins. Co.,* 2010 WL 11597704 at *7 (N.D. Ga. Dec. 21, 2010) (stating that a loss of business income coverage applies to economic losses resulting from suspended or reduced operations…"). Additionally, the Third Circuit in *American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co.*, 949 F.2d 690 (3d Cir. 1991) found that a partial suspension of operations activated coverage under the business interruption coverage at issue there. The court reasoned that to hold otherwise would conflict with the insured's duty to mitigate damages. Further, the fact that the policy provided that business interruption coverage would continue until the resumption of "normal business operations" implied coverage for less than "normal operations."

Likewise, the Eighth Circuit in *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 356 F.3d 850, 854-57 (8th Cir. 2004) held that a business interruption could be construed not to require a showing of stopped production. The court of appeals found that the phrase "interruption of business" includes extra expense or damage that would not have been incurred but for the insured peril that caused the damage to property. *Id*. at 855. And in *Studley Box and Lumber Co. v. National Fire Ins. Co.,* 85 N.H. 96, 154 A. 337 (1931), the

court held that where the fire damaged an integral part of the operation of the lumber plant, the insured would be compensated for partial suspension of business.

One Georgia case supports the point that business interruption does not require a complete cessation of operations. In *Rothenberg v. Liberty Mut. Ins. Co.*, 115 Ga. App. 26 (1967), the court examined whether business interruption insurance would extend to lost profits from the theft of goods from the business. The court of appeals concluded that it would not. The court reasoned that the stolen property was not an integral part of the building that housed the operation. However, the court concluded that coverage was limited to lost profits flowing from damage to the building or fixtures used in operation of the business which, at the time, were "an integral part of the building." 115 Ga. App. at 27-28.

Here, the damage at issue was to Appellants' industrial freezer, coolers, food inventory, and offices, which were all integral to the operations of the business. As a result, the loss of profits that flowed from this interruption of the business of Appellants should be covered by the policy.

As some commentators have noted, "a more reasonable interpretation would be to include in the meaning of 'suspension' the inability of any part of the described property to carry on the function to which it had been dedicated by the Insured." Morrison, Miller and Paris, *Business Interruption Insurance: Its Theory and Practice* (1987). Indeed, the requirement of complete cessation would have

the undesired effect of causing businesses to close unnecessarily to invoke coverage when even limited operations could be valuable to their customers.

In fact, Nationwide's own construction of the policy provision was consistent with this broader approach and did not see it as providing a hard and fast rule requiring complete cessation. Nationwide paid for lost business income relating to the 2016 Loss even though it is agreed that there was no complete cessation of business.

In sum, Nationwide's business interruption coverage should be construed to extend to scenarios in which there is substantial disruption to the business operations and not as limited to those in which there is a complete shutdown.

## IV.    APPELLANT IS ENTITLED TO HAVE ITS STATUTORY BAD FAITH CLAIMS FOR THE 2016 LOSS AND 2017 LOSS REINSTATED UPON REVERSAL OF THE DISMISSAL OF THE 2016 LOSS AND 2017 LOSS BREACH OF CONTRACT CLAIMS.

The district court dismissed Appellants' bad faith claims for the 2016 Loss and 2017 Loss on the sole basis that the breach of contract claims for those losses were also dismissed. Doc. 140 Pg 32. Since the dismissal of the breach of contract claims was in error, it necessarily follows that the dismissal of the associated bad faith claims was improper and must also be reversed.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the district court's order granting summary judgment with respect to the 2016 Loss, 2017

Loss, Appellants' loss of business income claims, and Appellants' bad faith claims be reversed and that the matter be remanded back to the district court for further proceedings.

Respectfully submitted this 20th day of June, 2024.


|  | */s/ Gary J. Toman*  |
|---|---|
| William Maxwell Compton | Gary J. Toman |
| Ga Bar No. 380092 | Ga. Bar No. 714651 |
| **MORGAN & MORGAN** | **WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC** |
| 25 Bull Street, Suite 400 | 3344 Peachtree Road N.E., Suite 2400 |
| Savannah, GA 31401 | Atlanta, Georgia 30326 |
| Ph. (912) 443-1017 | Ph. (404) 876-2700 |
| Fax (912) 443-1184 | Fax. (404) 875-9433 |
| mcompton@forthepeople.com | gtoman@wwhgd.com |
|  | *Attorney for Appellants* |

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and 11th Cir. Rule 28-1 the undersigned counsel for Appellant certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B)(i) in that the portions specified Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4 contain less than 13,000 words as calculated by the Word program with which the document was prepared.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL LLC

_/s/*Gary J. Toman*_____
Gary J. Toman
Georgia Bar No. 714651
*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Appellant was served pursuant to 11th Cir. Rule 25-3(a) on counsel of record for Appellee by filing the foregoing on the Court's ECF system, which will email notice to counsel:

This 20th day of June, 2024.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL LLC

*/s/ Gary J. Toman*_____
Gary J. Toman
Georgia Bar No. 714651
*Attorneys for Appellants*